## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LOUIS PISTOLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:19 -CV-001185 -MAB** |
| | ) | |
| **AMEREN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| **LOUIS PISTOLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:19-CV-001182-MAB** |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **J.F. ELECTRIC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter is before the Court on a series of motions. The first is Defendants J.F. Electric and Ameren's Motion for Protective Order regarding Plaintiff's Fourth and Fifth Request for Admissions and Fourth Request for Production to J.F. Electric, which was filed on April 21, 2022 (Doc. 111). The second is Plaintiff's Motion to Deny Defendants' Protective Order (Doc. 112), filed on April 25, 2022, which the Court interprets as a response to Defendants' April 21st motion. The third is Plaintiff's Motion for Clarification, filed on April 27, 2022 (Doc. 114). The fourth is Plaintiff's Amended Motion

to Deny Defendants' Protective Order (Doc. 116), filed on May 2, 2022 and the final motion is Plaintiff's Rule 60 Relief Motion from a Judgment or Order (Doc. 117), filed on May 2, 2022.

For the reasons set forth below, Defendants' motion for protective order is GRANTED IN PART and DENIED IN PART (Doc. 111). Plaintiff's motions to deny are simply responses in opposition (Docs. 112, 116) and are rendered MOOT based on the Court's rulings in this Order. Plaintiff's motion for clarification is GRANTED and the Court will provide clarification below (Doc. 114). Finally, Plaintiff's Rule 60 motion is DENIED (Doc. 117).

P<small>ROCEDURAL BACKGROUND</small>

The Court finds it necessary to quickly summarize the pertinent procedural background that led to this series of motions, some of which were touched upon at an April 2022 Discovery Dispute hearing.

The parties in this matter have been working through a series of discovery disputes for approximately six months. The parties first requested an extension of time for the discovery and dispositive motion deadlines on December 21, 2021 (Doc. 80), which was granted on December 27, 2021 (Doc. 81). The new deadlines were subsequently extended from the beginning of January 2022 to the end of the month (Doc. 81). In January, though, the Court was notified of a discovery dispute. However, the parties had submitted competing statements to the Court rather than a joint statement, which is what the Court requires to begin the process of seeking Court intervention on a discovery matter. *See Case Management Procedures, Judge Mark A. Beatty*, U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small>

COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS, available at https://www.ilsd.uscourts.gov/documents/Beatty.pdf (last visited June 14, 2022). Accordingly, the Court directed the parties to work together to submit one joint statement (including just one copy of the specific discovery in dispute) so that the Court could properly, and expeditiously, address those issues (Doc. 87). A discovery dispute conference was held on February 8, 2022 (Doc. 88). At this hearing, the Court spent nearly two hours working through written discovery issues with the parties (*Id.*). The Court encouraged the parties to consider the rulings the Court made on the record and whether these rulings can be applied to other discovery disputes (*Id.*). At that time, the parties had a settlement conference scheduled the following week with Judge Sison so the Court stayed both the dispositive motion and discovery deadlines, and indicated they would be reset if the parties failed to reach a settlement with Judge Sison (*Id.*).

The case did not settle and so the Court then held a status conference with the parties on March 28, 2022, to discuss how to resolve the remaining discovery disputes between the parties (Doc. 108). The Court directed the parties to prepare a joint statement of the still-outstanding discovery issues (Doc. 107).

On April 26, 2022, the Court held a discovery dispute conference. During this hearing, the parties briefly discussed Defendants' motion for protective order, which was filed just five days before the hearing, and Plaintiff's response, filed one day before the hearing (Docs. 111, 112). Ultimately, the Court ruled on a few items during the hearing, which were recorded in the minute entry entered the same day (Doc. 113). The Court ruled as follows:

A. The Defendant's objections as to J.F. Electric Inc.'s Answers to Plaintiff's First Set of Interrogatories Inc are ruled on as follows:

    i. Objection to Interrogatory 9 OVERRULED. Defendants are ordered to supplement regarding policies and procedures that govern reduction in force;

    ii. Objection to Interrogatory 16 is tabled, however the Court provides its tentative thoughts on the record. An order as to this issue to follow.

B. The Defendant's objection to Plaintiff's Second Request for Production as to J.F. Electric Inc. are ruled on as follows:

    i. Objection to request #5 of is OVERRULED. The Defendant is ordered to supplement with the WPA violations and any disciplinary actions as a result of WPA violations from January 5, 2015 through December 31, 2018.

    ii. Defendant has answered Request #10; if Plaintiff believes this answer warrants a motion, he can file a motion.

C. Defendant's objections to Ameren's Responses to Plaintiff's Second Request for Production is as follows:

    i. Objection to request #5 has been tabled, however Court provides tentative thoughts. An order as to this issue to follow. The Court will conduct an in-camera review of the documents at issue that Defendant has redacted. The Court will review example documents from each of the two predetermined buckets. Plaintiff is to provide the selected examples to Defendant in writing. Defendant will then submit the redacted and unredacted versions to the Court by May 6, 2022.

(Doc. 113).

On April 27, 2022, Plaintiff filed his motion to clarify, detailing that he could not remember the Court's ruling on a particular issue and would like more of an explanation (Doc. 114). Soon after, on April 29, 2022, the Court entered an Order that addressed the outstanding discovery issues tabled during the hearing. The Court ruled as follows:

ORDER: On April 26, 2022, the Court tabled a ruling on one interrogatory directed at JF Electric and one request for production directed at Ameren. The Court now rules as follows. As to JF Electric's answer and supplemental answer to Interrogatory 16, the Court finds JF Electric's answer and supplemental answer to be sufficient. JF Electric has not lodged an objection

and has answered and supplemented its answer and has complied with its obligation. As to Defendant Ameren's objection to RFP 5, Ameren's objection is sustained. The request is not relevant or proportional to the needs of the case for the reasons the Court outlined on the record on April 26. The plaintiff was an employee of JF Electric at all times relevant to this case. The Court ordered JF Electric to provide supplemental documents regarding comparator evidence. However, this similar request, directed at Ameren, which was not his employer is not relevant on the topic of comparator evidence.

(Doc. 115).

On May 2, 2022, Plaintiff, without requesting leave of the Court, filed an amended motion to deny Defendants' protective order (Doc. 116). The same day, Plaintiff filed a motion "on order requesting comparator evidence," in which Plaintiff requests the Court to reconsider part of its April 29, 2022 Order (Doc. 117). Defendants filed a response in opposition to this motion on May 16, 2022, and Plaintiff filed a reply on May 22, 2022 (Docs. 118, 119).

## DISCUSSION

Presently before the Court are a total of five motions, all filed within a span of about two weeks. The Court will address each in turn.

### I.    Defendants' Motion for Protective Order

The first of the five motions is Defendants' joint motion for protective order, which was filed on April 21, 2022 (Doc. 111). In this motion, Defendants detail that certain discovery requests, made by Plaintiff, are improper for a variety of reasons (*Id.*). As a result, Defendants request Court intervention in the form of a protective order that would strike these improper requests for admissions and production, relieving Defendants of the responsibility to respond.

Plaintiff filed two motions to deny in response to Defendants' motion. The first was filed on April 25, 2022 (Doc. 112) and the second, which Plaintiff detailed as an "amended motion," was filed on May 2, 2022 (Doc. 116). Plaintiff did not request leave to file his amended motion. Nevertheless, a review of the amended motion reveals that Plaintiff removed the "bold" font setting in certain portions of the motion (and simply used regular, non-bold font) and beginning on page 12 underlined the new or amended portion of the brief. Plaintiff argues that he has provided Defendants with discovery requests without anyone having to "pull teeth," and expects the same prompt cooperation in return (Doc. 116, p. 2). Furthermore, Plaintiff argues that the discovery provided by Defendants is overly redacted and unhelpful (*Id.* at pp. 2-3). Finally, Plaintiff states that this motion for protective order is further proof that Defendants are not engaging with Plaintiff in good faith, as they did not meet and confer with Plaintiff prior to filing this motion. Ultimately, Plaintiff argues, this is a tactic, or tool, used to intimidate him and put him at a further disadvantage as a *pro se* litigant.

The Court has wide discretion in settling discovery disputes, determining the scope of discovery, and otherwise controlling the manner of discovery. *See, e.g., Thermal Design, Inc. v. American Soc'y of Heating, Refrigerating and Air-Conditioning Engrs., Inc.,* 755 F.3d 832, 839 (7th Cir. 2014) (citation and quotations omitted). It follows that a district court has discretion in deciding when a protective order is appropriate during discovery and the degree of protection required. *Jannx Med. Sys., Inc. v. Methodist Hosps., Inc.,* No. 2:08-CV-286-PRC, 2010 WL 4789275, at *5 (N.D. Ind. Nov. 17, 2010) (internal citation omitted). Under Rule 26(c), a court may enter a protective order for good cause shown to

protect a party from annoyance, oppression, undue burden, or expense. *SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02 C 7682, 2006 WL 1343647, at \*2 (N.D. Ill. May 12, 2006), citing FED. R. CIV. P. 26(c).

There were a number of considerations the undersigned took into account in deciding the motions at issue. Plaintiff frequently argues that, as a *pro se* litigant, he is at a disadvantage in these proceedings. The Court is keenly aware that Plaintiff is litigating this case *pro se* and does not have formal legal training. In fact, the Court has outlined in prior orders that the pleading standards for *pro se* litigants is considerably relaxed, for example. *See* Doc. 41, (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)); *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (even in the wake of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *Arnett v. Webster,* 658 F.3d at 751 (7th Cir. 2011) (reminding courts to "construe pro se complaints liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers"); *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir.2010) (explaining after *Iqbal* that the plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together"). If the prior orders were not clear, the Court emphasizes here, once again, that "[t]he accessibility of the courts to those who cannot afford counsel is too important a value to be sacrificed for the needless exaction of harsh penalties for isolated and minor mistakes." *Sanders v. Melvin,* 25 F.4th 475, 483 (7th Cir. 2022) (quoting *Childs v. Duckworth*, 705 F.2d 915, 922 (7th Cir. 1983)). The Court takes its duty to "insure[sic] that the claims of a *pro se* [litigant] are given a 'fair and meaningful

consideration,'" very seriously. *Id.*[1] It is because of this duty, and the undersigned's desire to not foreclose the district court to *pro se* litigants, that the Court undertook a line-by-line analyses of his amended pleadings, for example, to ensure the Court properly understands Plaintiff's arguments.

Additionally, the undersigned is cautious about foreclosing any legitimate avenue of discovery prematurely. The undersigned does not want to hamstring Plaintiff in discovering relevant information necessary to prove his case. But, by the same token, a district court has a duty, "of special significance in lengthy and complex cases where the possibility of abuse is always present," to supervise and limit discovery when it feels the discovery is cumulative, unnecessary, designed to annoy or harass, excessively expensive, or only marginally important. *Mr. Frank, Inc. v. Waste Mgmt., Inc.,* No 80 C 3498, 1983 WL 1859, at *1 (N.D. Ill. July 7, 1983) (citations omitted). "The discovery rules are not a ticket…to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's [or pro se litigant's] interest." *Robinson v. Stanley,* No. 06 C 5158, 2009 WL 3233909, at *3 (N.D. Ill. Oct. 8, 2009) (quoting *Vakharia v. Swedish Covenant Hosp.,* 1994 WL 75055 at *2 (N.D. Ill. 1994)). "Parties are entitled to a reasonable opportunity to investigate the facts—and no more." *Robinson,* 2009 WL 3233909, at *3 (quoting *Vakharia,* 2009 WL 3233909, at *3). Ultimately, the plain language of Federal Rule

---

[1] Moreover, "[a] litigant who appears *pro se* should not be treated more harshly for negligent errors than one represented by an attorney. Otherwise, only those wealthy enough to be able to afford an attorney would be able to insulate themselves from the consequences of an occasional human error …." *Sanders v. Melvin,* 25 F.4th 475, 483–84 (7th Cir. 2022) (citations omitted).

26(b)(1) requires the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that…the discovery sought is unreasonably cumulative or duplicative." FED. R. CIV. P. 26(b)(2)(C).

A significant amount of discovery has already taken place in this case. Plaintiff outlines that he has produced "thousands of unredacted and confidential files" to Defendants (Doc. 116, p. 2). Defendants note that they have prepared answers and responses, and supplemental answers and responses, to forty-nine (49) interrogatories, one hundred and nine (109) requests for production, and one hundred thirty-seven (137) requests for admissions (Doc. 111, pp. 1-2). Additionally, Defendants contend they have produced one thousand twenty-two (1,022) pages of documents to Plaintiff (*Id.* at p. 2). Plaintiff, however, argues that these documents are mainly his own medical records, for which he had prior access and provided to Defendants themselves (Doc. 116, p. 2). Defendants outline that in addition to exchanging written discovery, they have also met with Plaintiff numerous times to discuss discovery issues. Specifically, the parties met on October 18, 2021; November 5, 2021; December 3, 2021; December 17, 2021; January 13, 2022; March 9, 2022; and April 5, 2022 (Doc. 111, p. 2).

Defendants' motion for protective order is directed at a series of additional discovery requests Plaintiff made after the parties' April 5, 2022 discussion. Requests for Admission ("RFA") are governed by Federal Rule of Civil Procedure 36, while Requests for Production ("RFP") are governed by Rule 34. *See* FED. R. CIV. P. 36; 34. Plaintiff served additional RFAs on April 8 (titled "Plaintiff's Fourth Request for Admissions to Defendants"); April 12 (titled "Plaintiff's Fourth Request for Admissions to Defendant

Ameren"); and April 13, 2022 (titled "Plaintiff's Fifth Request for Admissions to Defendant J.F. Electric") (Docs. 111-1, 111-2, 111-3). Plaintiff served an RFP also on April 13, 2022 (titled "Plaintiff's Fourth Request for Production of Documents to Defendant J.F. Electric") (Doc. 111-4). Defendants argue that, generally, these RFAs and RFP are confusing, improper, and duplicative; therefore, the Court should enter a protective order relieving them of their obligation to respond. The Court will address each in turn, although there are similar issues running throughout each of Plaintiff's Requests.

A. <u>Plaintiff's Fourth Request for Admissions to Defendants</u>

The Court begins its analysis with Plaintiff's Fourth Request for Admissions to Defendants (Doc. 111-1). When used properly, "Rule 36 allows parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987); *see also, e.g.*, 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2256 (3d ed.) ("[T]he purpose of this rule…was and is to eliminate from controversy those matters that will not be disputed."). "Essentially, Rule 36 is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial*.'" *Perez v. Miami-Dave Cty.,* 297 F.3d 1255, 1268 (11th Cir. 2002) (emphasis in original) (citation excluded); *accord Tamas v. Family Video Movie Club, Inc.,* 301 F.R.D. 346, 347 (N.D. Ill. 2014).

Defendants highlight that a number of Plaintiff's requests are vague, duplicative, and confusing. For example, Plaintiff's first request states, "Admit that the 2nd paragraph of page 3, of Defendant's Position Statement to the E.E.O.C., Defendant states; 'Several

days later, on October 12, 2018, Complainant was offered work at other properties and other projects; however, Complainant declined that work being offered, and J.F. Electric continued to pay Complainant his usual wages, inclusive of overtime pay throughout that period.'"[2] (Doc. 111-1, p. 2). As best as the Court can surmise, Plaintiff is requesting Defendants to admit that one of the Defendants stated the quoted language in its Position Statement to the E.E.O.C. Similarly, Plaintiff's fifth request also asks Defendants to "admit" that the Defendant's Position Statement to the E.E.O.C. says: "refused to take accountability for his actions at Ameren's property" (Doc. 111-1, p. 2).

In his response, Plaintiff does not clearly explain how or why these Requests are proper or relevant; however, Plaintiff does explain that Ameren refused to cooperate with the E.E.O.C. by not providing a Position Statement (Doc. 112, p. 4). Plaintiff highlights that Ameren communicated to Plaintiff that J.F. Electric submitted a Position Statement to the E.E.O.C. on Ameren's behalf, but this was a "lie," as a FOIA request showed that there was no Position Statement submitted on Ameren's behalf to the E.E.O.C.. *Id.*

The Court does not have the advantage of having the documents referenced in these materials before it (*e.g.,* the E.E.O.C. position statement quoted in Plaintiff's Fourth

---

[2] Plaintiff, in his response, notes that he has learned through the discovery process that Ameren did not submit a Position Statement to the E.E.O.C (Doc. 116). This Fourth Set of Requests for Admission appears to be directed at *both* Defendants. It is not directed at one or the other, but rather "Defendants" as a group. But if Plaintiff knows that Ameren did not submit a Position Statement, it is unclear to the Court why there would be any utility in asking Ameren to admit or deny what a Position Statement submitted by J.F. Electric says.

RFA's to Defendants and likely filled out by J.F. Electric[3]), but the Court is hard pressed to see any utility in asking a party to admit that a document says what it says. To the Court's knowledge, there is no dispute as to the legibility or readability of the document. In short, the document says what it says – and everyone can see what it says – so there is no need to admit or deny what it says. *See, e.g., Reitz v. Creighton*, No. 15 C 1854, 2019 WL 5798680, at *2 (N.D. Ill. Nov. 7, 2019) ("But it is unnecessary to demand a party admit or deny what is contained in a deposition. The witness either said what is quoted or he didn't.").[4]

Plaintiff also includes Requests that require Defendants to admit controverted facts. Generally speaking, requests about controversial or disputed issues are permissible in RFAs. *See* FED. R. CIV. P. 36(a)(5). However, courts in some instances have declined to compel a party to respond to requests to admit that seek information related to the fundamental disagreement of the lawsuit, perceiving it to be "a useless exercise." *Sommerfield v. City of Chicago,* 251 F.R.D. 353, 356 (N.D. Ill. 2008) (citing *Vakharia.*, 1994 WL 75055 at *7). Many of Plaintiff's requests fall into this "useless exercise" definition, as they cannot possibly serve to eliminate an uncontested issue. For example, Plaintiff requests that Defendants admit certain controverted facts relating to Plaintiff's mental and/or physical disabilities at the time he was laid off. Specifically, Plaintiff's seventh request

---

[3] The Court reviewed the exhibit attached to Plaintiff's response, but could locate any Position Statement in it (Doc. 112-1). Conspicuously, the parties do not include citations to this document in their briefs, therefore the Court can only conclude that this document is not an attachment to the briefing.

[4] Additionally, Requests 2, 3, 4, 10, 11, 12, 13, 16, 18, and 22 all simply ask the Defendants to admit that a document says what it says (*See* Doc. 111-1).

states, "Admit that, in the discovery disclosed to the Plaintiff from the Defendants, the alleged actions at Ameren's property, in which the Defendants suggest that the Plaintiff should have taken accountability for, willfully violating WPA, rude to dispatcher and removing hold tags were all found to be untrue" (Doc. 111-1). These facts, though, are disputed by the parties, and are central to Plaintiff's claims.[5] Again, RFAs are not intended to uncover evidence, but "to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties *agree*." *Stanek v. St. Charles Comm. Unit Cummings Sch. Dist.*, No. 13 C 3106, 2020 WL 9348204, at *5 (N.D. Ill. Sept. 3, 2020) (citing *Kasuboski*, 834 F.2d at 1350); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (stating that requests may not "seek information as to fundamental disagreement at the heart of the lawsuit").[6] In sum, a careful review of Plaintiff's Fourth Requests for Admission reveals that the set, as a whole, is improper and clearly not aimed at serving the purpose of Rule 36. Accordingly, Defendants are relieved of their obligation to respond to Plaintiff's Fourth Requests for Admission.

---

[5] *See also Tamas v. Family Video Movie Club*, 301 F.R.D. 346, 347 (N.D. Ill. 2014) (excusing the plaintiffs from responding to requests to admit because, in part, the requests sought information related to the fundamental disagreement of the lawsuit and were therefore not "designed to identify and eliminate those matters on which the parties agree"); Colin E. Flora, *It's A Trap! The Ethical Dark Side of Requests for Admission*, 8 ST. MARY'S J. LEGAL MAL. & ETHICS 2, 32 (2017) ("When the matter is clearly subject to a good faith dispute—such that no reasonable party would admit—the good-faith obligation dictates that requests not be sought.")

[6] Other examples of Requests to Admit that are clearly not designed to eliminate issues or narrow the issues are: 6, 8, 9, 14, 17, 19, and 23 (*See* Doc. 111-1).

B.  <u>Plaintiff's Fourth Request for Admissions to Defendant Ameren</u>

There are similar issues in Plaintiff's Fourth Request for Admissions directed just against Ameren (Doc. 111-2). Again here, Plaintiff asks Ameren to admit or deny that a document says what it says. The Court need not regurgitate all of its previous analysis on why this is a futile exercise. Suffice to say, these Requests where Ameren is simply asked to admit or deny that a document says what it says serve no purpose when there is no genuine dispute as to the readability or legibility of the document. *See supra* pp. 11-12. In the Requests to Ameren, Plaintiff sprinkles in some Requests that ask Ameren to admit, for example, the time stamp on an e-mail (*e.g.*, No. 8), or that the sender is not on an e-mail (*e.g.*, No. 10), or that a prior pleading says what it says (*e.g.*, No. 35). But the overall import is the same: the document, e-mail, or pleading says what it says and there is no utility in asking a party to admit or deny as much.[7] Another such example of an improper request: Plaintiff asks in Request 57, for Ameren to "admit that the Merriam Webster Dictionary definition of intentions is 'what one intends to do or bring about.'" (*Id.* at p. 9). The Court sees no way in which this Request furthers the goals of Rule 36.

There are problems with many other Requests as well. Generally speaking, the problematic Requests include Requests that either ask Ameren to interpret or speculate on the meaning of sentences, e-mails, or documents, or to admit or deny clearly controverted facts. Accordingly the following Requests are improper and Ameren is

---

[7] This applies to Requests: 1, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18, 19, 20, 23, 24, 25, 28, 29, 31, 34, 35, 36, 39, 43, 44, 45, 46, 48, 54, 55, and 57.

relieved of its obligation to answer: 13, 15, 16, 21, 22, 26, 27, 28, 29, 40, 41, 42, 49, 55, 58, 59, 60.

Ameren also objects to some of Plaintiff's Requests as duplicative of prior Requests. But the few Requests Ameren points the Court to as "duplicative" require the Court to piece together the answers to multiple prior Requests. Thus the Court does not view these requests as duplicative per se.

Finally, the Court notes that in its review of the Requests, there are some that are appropriate and Ameren will be required to answer these Requests. The Court found these Requests to be fairly straightforward and easily admitted or denied. They are as follows: 2, 4, 30, 32, 33, 37, 38, 47, 50, 51, 52, 53, 56, 61, 62, 63, 64, 65. Ameren shall comply with its obligation under Rule 36 with respect to these requests.

C. <u>Plaintiff's Fifth Request for Admissions to Defendant J.F. Electric</u>

Plaintiff's Fifth Request for Admissions directed at J.F. Electric suffers from the many of the same flaws the Court has already discussed (Doc. 111-3). The following Requests, again, simply ask the Defendant to admit or deny that a document says what it says: 1, 3, 5[8], 6.

There are also Requests that again ask J.F. Electric to interpret the meaning of certain documents, which the Court views is an improper use of the Rule 36. These

---

[8] There are two requests labeled "5." The first Number 5 reads: "Admit that in the REASON FOR SEPARATION, FOIA 0053, the checked box reads Reduction in Force. Just Admit or Deny will be a sufficient Response to this Request." (Doc. 111-3, p. 2). The Court refers to the first Number 5 here.

Requests are as follows: 2, 4, 5[9], 8, 9. The remaining three Requests (7, 10, and 11) are duplicative of other Requests and prior discovery Requests. Accordingly, J.F. Electric will be relieved of its obligation to respond to the Fifth Request for Admission.

D. Plaintiff's Fourth Request for Production to Defendant J.F. Electric

With respect to Plaintiff's Request for Production, the Court declines to impose a protective order at this time. The major thrust of J.F. Electric's arguments to support its motion for protective order is that the majority of these requests concern attorney work product and are privileged (Doc. 111, pp. 9-10).   As an initial matter, Federal Rule of Civil Procedure 34 provides that a party may serve a request to produce "any designated documents or electronically stored information" that "describe[s] with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A), (C). Rule 34 takes an "expansive approach" to the breadth of what information is discoverable. *Melgoza v. Rush Univ. Med. Ctr.*, No. 17 C 6819, 2019 WL 2504094, at *3 (N.D. Ill. June 14, 2019).

The work product privilege, codified in Federal Rule of Civil Procedure 26(b)(3), protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P (26)(b)(3). *See also Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) ("The purpose of the qualified privilege for attorney work product ... is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an

---

[9] This is the second Number 5 Request.

adversary."); *MSTG, Inc. v. AT & T Mobility LLC,* No. 08 C 7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011) ("The work product doctrine protects documents that an attorney or representative of a party prepares in anticipation of litigation in order to prepare or analyze a client's case").   To be clear, "'Rule 26 clearly protects party, and not just attorney, preparation' and the 'the fact that a particular communication may not go to an attorney does not prevent its being work product.' " *Est. of Her v. Sadownikow,* No. 17 C 1015, 2018 WL 3574888, at *3 (E.D. Wis. July 25, 2018) (rejecting argument that document was not protected work product unless it was created at the direction of an attorney) (quoting *In re Air Crash Disaster at Sioux City,* 133 F.R.D. 515, 520 (N.D. Ill. 1990); *Abbott Labs. v. Alpha Therapeutic Corp.,* 200 F.R.D. 401, 409 (N.D. Ill. 2001) (same).

Under federal law, the work product privilege is *narrowly construed* because it makes the search for truth more difficult, as it prevents disclosure of relevant and probative information. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.,* No. 3:17-CV-00991-SMY-GCS, 2021 WL 3186959, at *3 (S.D. Ill. July 28, 2021) (citing *Slaven v. Great Am. Ins. Co.,* 83 F. Supp. 3d 789, 794 (N.D. Ill. 2015)). Therefore, a party asserting work product privilege must demonstrate, with particularity and through competent evidence, that the privilege applies to each document for which it is claimed. *Id.* So in this matter, the burden is on J.F. Electric to demonstrate that each document sought and not produced is covered by the work product privilege. *United States v. BDO Seidman,* 337 F.3d 802, 811 (7th Cir.2003); *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991); *Oleksy v. General Elec. Co.,* 2011 WL 3471016, at *3 (N.D.Ill.2011). "Blanket claims of privilege or conclusory assertions are insufficient to carry this burden." *White,* 950 F.2d at 430; *Moore v. Board of*

*Trustees of Illinois Community College Dist. No. 508,* 2010 WL 4703859, at *2 (N.D.Ill. 2010). Given Illinois' "strong policy of encouraging disclosure," it is "the privilege, not the duty to disclose, that is the exception," and thus the privilege is construed "within its narrowest possible limits." *Waste Management, Inc. v. International Surplus Lines Insurance Co.,* 579 N.E.2d 322, 327 (1991).

J.F. Electric does not argue, with competent evidence and particularity, why the documents outlined in Plaintiff's Fourth Request are covered by the work product privilege; rather, J.F. Electric makes blanket arguments that documents are privileged without providing information necessary for the Court to determine if these materials are, in fact, privileged. Therefore, the Court declines to enter a protective order for this set of Requests, at this time.

J.F. Electric is directed to answer, object, or answer subject to certain objections within 45 days from the date of this order. The Court allots 45 days because following the entry of this Order, Plaintiff has 15 days (until June 30, 2022) to review the case law cited above regarding attorney-work product and determine whether he is willing to withdraw any Request that is seeking privileged information. If so, Plaintiff should notify counsel in writing of the Request(s) he will withdraw. Then J.F. Electric has 30 days to answer, object, or answer subject to certain objections (the 30th day falls on a Saturday so until August 1, 2022).

The Court encourages J.F. Electric that if it objects because it believes the discovery is duplicative, specifically identify which discovery Request(s) it is duplicative of in its objection. With respect to J.F. Electric's work product privilege arguments, J.F. Electric

must specifically assert this privilege in response to the Request(s). J.F. Electric should also keep in mind Rule 26(b)(5), which provides for a party's obligation when claiming privilege.

## II.    Plaintiff's Motions

After the April 26, 2022 hearing, Plaintiff filed a series of three motions, one of which was Plaintiff's amended motion to deny Defendants' protective order, which the Court has already addressed. The Court will address Plaintiff's other two motions here.

### A.    Plaintiff's Motion for Clarification

On April 27, 2022, Plaintiff filed a motion for clarification relating to the April 26, 2022 hearing (Doc. 114, p. 1). In short, he says he cannot remember the Court's ruling on whether he can speak to a witness (who is a J.F. Electric employee) and who is represented by J.F. Electric's attorneys for the purpose of his scheduled deposition. The witness' name is Mr. Zbinden. Counsel for J.F. Electric have indicated they intend to represent Mr. Zbinden at his deposition and have asked Plaintiff to communicate through counsel (rather than directly with Mr. Zbinden) regarding the deposition. The Court found this to be an appropriate request and directed Plaintiff to comply with it.

Plaintiff claims Mr. Zbinden is a lineman working for J.F. Electric through the local union hall (International Brotherhood of Electrical Workers, Local 309). In other words, Mr. Zbinden is not a managerial worker for J.F. Electric. Plaintiff claims Mr. Zbinden did not request to be represented by J.F. Electric and references an affidavit he procured from Mr. Zbinden back in October 2021 (Doc. 114). The affidavit, however, is not attached. Additionally, Plaintiff points the Court to Rule 4.2 to suggest that a lawyer representing

a corporation to enforce a blanket prohibition against speaking with corporate employees. *Id.*

But, before looking to the commentary of Rule 4.2, its important to look to the actual rule itself. Rule 4.2 prohibits a lawyer who is representing a client from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." ABA Rule 4.2 Communication with Person Represented by Counsel—Comment, https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_4_2_communication_with_person_represented_by_counsel/ (last visited June 8, 2022).[10]  While Plaintiff is not a lawyer, he is representing himself *pro se* in this matter and this rule must extend to him as a *pro se* litigant. *See Villa v. City of Chicago*, 1986 WL 13728, at *3, n.2 (N.D. Ill. Dec. 3, 1986) ("Plaintiff, a pro se litigant, is held to the same standards of professional conduct as an attorney and was warned by this court that contacting defendants directly when he knew that defendant . . . was represented by counsel could constitute a violation of DR 7–104(A)."); *c.f. Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994) ("Although civil litigants who represent themselves ... benefit from various procedural protections not otherwise afforded to the ordinary

---

[10]  Illinois has an analogous rule regarding communications with persons who are represented by counsel. *See* Ill. Rules of Prof. Conduct, Rule 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").

attorney-represented litigant, pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines.")(internal citations omitted).

Plaintiff has been informed that Mr. Zbinden is represented by J.F. Electric's counsel for the purpose of his deposition (*i.e.* that is the "subject of the representation" noted in the Rule). There is no suggestion that Mr. Zbinden has terminated the representation he is receiving from J.F. Electric's attorneys in connection with his deposition. And Plaintiff has been informed by J.F. Electric's counsel not to communicate with Mr. Zbinden about his deposition. In other words, Plaintiff does not have the "consent" of counsel to speak with Mr. Zbinden regarding his deposition without counsel present. Nor has he been authorized by the Court to do so. Accordingly, the Court will grant Plaintiff's motion for clarification, but reiterates its ruling: Plaintiff is not to have any contact with Mr. Zbinden (or any other party or witness whom he knows to be represented) about the subject of the representation unless he has received consent from counsel to do so. If he wishes to speak to Mr. Zbinden about his deposition, his first stop should be counsel for J.F. Electric.

B.  Plaintiff's Rule 60 Relief from a Judgment or Order Motion

On May 2, 2022, Plaintiff filed a motion for relief from a judgment or order based on Rule 60 (Doc. 117). In the motion, Plaintiff asks the Court to reconsider its April 29, 2022 text order, which reads as follows:

> ORDER: On April 26, 2022, the Court tabled a ruling on one interrogatory directed at JF Electric and one request for production directed at Ameren. The Court now rules as follows. As to JF Electric's answer and supplemental answer to Interrogatory 16, the Court finds JF Electric's answer and supplemental answer to be sufficient. JF Electric has not lodged an objection

and has answered and supplemented its answer and has complied with its obligation. As to Defendant Ameren's objection to RFP 5, Ameren's objection is sustained. The request is not relevant or proportional to the needs of the case for the reasons the Court outlined on the record on April 26. The plaintiff was an employee of JF Electric at all times relevant to this case. The Court ordered JF Electric to provide supplemental documents regarding comparator evidence. However, this similar request, directed at Ameren, which was not his employer is not relevant on the topic of comparator evidence.

(Doc. 115)

Plaintiff takes umbrage, specifically, with the portion of this Order directed at comparator evidence. Plaintiff argues that he has repeatedly outlined, on March 28 and April 26, 2022, that he is seeking comparator evidence of similarly situated "contractor employees" who are contractors on Ameren sites from November 21, 2015 through November 21, 2018 (Doc. 117, p. 2). Defendants filed a motion in opposition arguing, generally, that the Court's Order was correct and that Plaintiff's request is not proportional to the needs of the case (Doc. 118). Plaintiff filed a reply brief, where he reiterates that he is asking for comparator evidence of "contractor employees, such as [himself], who worked on Ameren property and were immediately banned and had their badge access revoked, before an investigation was completed" (Doc. 119, p. 3). He outlines that this evidence is relevant to his case and the Court erred in its April 29, 2022 Order.

Rule 60(b) provides the following:

the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under <u>Rule 59(b)</u>; (3) fraud (whether heretofore denominated intrinsic or extrinsic),

> misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. P. 60(B)

The Court's April 28, 2022 Text Order was not a final order or judgment, so it seems as if Plaintiff's motion is better analyzed as a motion for reconsideration. The Court has inherent power to reconsider interlocutory orders at any time prior to the entry of final judgment. *E.g., Marconi Wireless T. Co. of Am. v. United States*, 320 U.S. 1, 47–48 (1943); *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018); FED. R. CIV. P. 54(b). That being said, the Court's prior rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F. Supp. 2d 804, 820 (S.D. Ill. 2002) (citing *Rhone–Poulenc, Inc. v. Int'l Ins. Co.*, 877 F.Supp. 1170, 1173–74 (N.D. Ill. 1995)). Reconsideration of an interlocutory order is only appropriate when a court has misunderstood a party, made a decision outside the adversarial issues presented to the court by the parties, made an error not of reasoning but of apprehension, or where a significant change in the law or the facts has occurred since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). *See also Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, 897 F.3d 786, 795 (7th Cir. 2018) ("[M]otions to reconsider exist to spare parties and courts unnecessary appeals.") "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

The Court considered Plaintiff's arguments about comparator evidence, made during the April 26, 2022 Discovery Dispute Conference, but decided that this type of discovery was not proportional to the claims in the present matter. Plaintiff has failed to identify an appropriate reason for the Court to reconsider its prior Order, as the undersigned has not misunderstood Plaintiff, made a decision outside the adversarial issues presented to the court by the parties, made an error of apprehension, or identified a significant change in the law or facts that occurred after the submission of the issue to the Court. *Bank of Waunakee,* 906 F.2d at 1191. It appears that Plaintiff is unhappy with the Court's decision, but "[a] manifest error is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000). For these reasons, Plaintiff's motion for Rule 60 relief, or reconsideration, is DENIED (Doc. 117).

### III.    Plaintiff's Sealed Exhibits

Finally, the Court must address Plaintiff's sealed exhibits attached to his April 25, 2022 motion (Docs. 112; 112-1). Plaintiff filed his April 25, 2022 motion along with an attachment, which Plaintiff apparently asked the Clerk of Court to file under seal as it contains sensitive information. The Court has reviewed the exhibit and does not agree that it contains sensitive information; therefore, the Clerk of Court will be directed to unseal Plaintiff's exhibits attached to his April 25, 2022 motion (Doc. 112-1).

Generally speaking, there is a strong presumption in the Seventh Circuit to have open judicial proceedings. *Doe v. Village of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). "Secrecy in judicial proceedings is disfavored." *GEA Grp. AG v. Flex-N-Gate Corp.*, 740

F.3d 411, 419 (7th Cir. 2014). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010). *See also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("In civil litigation only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault), is entitled to be kept secret . . . .").

Plaintiff has not provided a reason to the undersigned as to *why* his exhibit must be sealed. The parties jointly requested the Court to enter a Confidentiality and Protective Order, which the Court did on October 26, 2021 (Docs. 77, 79). The Protective Order outlines, in relevant part, that "[i]n the event a party seeks to file documents under seal with the Court containing Confidential Information, as outlined in this Order, the party *must seek leave* from the Court before filing those documents under seal" (Doc. 79, p. 5) (emphasis added). Upon review of Plaintiff's exhibit, it contains documents Plaintiff relies heavily on to support his motion. In the Court's review of the exhibits, there is nothing the Court can discern that would constitute a trade secret or other type of confidential proprietary information. Nor can the Court identify any information in the exhibits that would be protected from disclosure by a recognized privilege. It is, as best the Court can tell, just documents from the E.E.O.C. file. Accordingly, there is nothing contained within these exhibits that would warrant secrecy. And Plaintiff failed to ask the Court to seal the documents in the first instance.

For these reasons, the Clerk of Court is DIRECTED to UNSEAL Plaintiff's exhibit, attached to his April 25, 2022 motion (Doc. 112-1). Should Plaintiff believe that documents, in the future, should be filed under seal, he shall seek leave of the Court to file said documents under seal prior to filing them on the docket, in accordance with the Confidentiality and Protective Order (*See* Doc. 79).

CONCLUSION

For the aforementioned reasons, Defendants' motion for protective order is GRANTED IN PART and DENIED IN PART (Doc. 111).

The motion for protective order is GRANTED as to Plaintiff's Fourth Request for Admissions to Defendants (Doc. 111-1) and Plaintiff's Fifth Request for Admissions to J.F. Electric (Doc. 111-3). Defendants are excused of their obligation to respond to these Requests.

The motion for protective order is GRANTED IN PART and DENIED IN PART as to Plaintiff's Fourth Request for Admissions to Ameren (Doc. 111-2), as outlined *supra*. Ameren is ORDERED to comply with its obligation under Rule 36 with respect to the following: 2, 4, 30, 32, 33, 37, 38, 47, 50, 51, 52, 53, 56, 61, 62, 63, 64, 65. Ameren is relieved of its obligation to respond to all of the other Requests.

Finally, the motion for protective order is DENIED as to Plaintiff's Fourth Request for Production to J.F. Electric (111-4). J.F. Electric will have to answer, object, or answer subject to objections. But before doing so, on or before June 30, 2022, Plaintiff is ORDERED to review the case law cited in this Order regarding work-product privilege and notify Defendants' counsel in writing whether he will withdraw any of his Requests.

J.F. Electric will then have until August 1, 2022 to answer, object, or answer subject to certain objections.

Plaintiff's motions to deny are basically responses in opposition (Docs. 112, 116) and will be rendered MOOT based on the Court's rulings in this Order.

Plaintiff's motion for clarification is GRANTED (Doc. 114); the Court offers clarification of its ruling.

Finally, Plaintiff's Rule 60 motion is DENIED (Doc. 117).

Additionally, the Clerk of Court is DIRECTED to UNSEAL Plaintiff's exhibits attached to his April 25, 2022 motion (Doc. 112-1).

The parties are reminded of the new discovery deadline of August 23, 2022 and the dispositive motion deadline of September 23, 2022 (Doc. 120). This case will be set for a status conference in the near future to discuss the inordinate amount of time and resources the parties and the Court have expended on discovery in this case. The Court will also discuss what steps it is contemplating taking as discovery winds down in order to promote a smoother and more cooperative process.

**IT IS SO ORDERED.**

**DATED: June 15, 2022**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**